IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**FRANK JONATHAN BARNES,**

    **Petitioner,**

    v.

**WARDEN, NORTH CENTRAL
CORRECTIONAL INSTITUTION,**

    **Respondent.**

Case No. 2:20-cv-4954
Judge James L. Graham
Magistrate Judge Kimberly A. Jolson

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Return of Writ, Petitioner's Reply, and the exhibits of the parties. For the reasons that follow, it is **RECOMMENDED** that this action be **DISMISSED**.

**I.    BACKGROUND**

Petitioner challenges his December 2018 convictions after a jury trial in the Logan County Court of Common Pleas on domestic violence, abduction, disrupting public service, intimidation, and menacing by stalking. (*See generally* Doc. 1). The Ohio Third District Court of Appeals summarized the facts and procedural history of the case as follows:

> {¶2} A seven count indictment was filed against Barnes on May 8, 2018, alleging that Barnes had committed (Count 1) Domestic Violence in violation of R.C. 2919.25(A), a felony of the fourth degree due to Barnes having a prior conviction for domestic violence or a crime substantially similar, (Count 2) Abduction in violation of R.C. 2905.02(A)(2), a felony of the third degree, (Count 3) Felonious Assault in violation of R.C. 2903.11(A)(1), a felony of the second degree, (Count 4) Disrupting Public Services in violation of R.C. 2909.04(A)(1), a felony of the fourth degree, (Count 5) Disrupting Public Services in violation of R.C. 2909.04(A)(3), a felony of the fourth degree, (Count 6) Intimidation of an Attorney, Victim, or Witness in a Criminal Case in violation of R.C.

2921.04(B)(1), a felony of the third degree, and (Count 7) Menacing by Stalking in violation of R.C. 2903.211(A)(1), a felony of the fourth degree.

{¶3} Five of the seven charges (Counts 1–5) stemmed from an incident that occurred on April 7, 2018. At that time, it was alleged that Barnes lived with his girlfriend in this matter, Ashley D. ("Ashley"). Ashley's two children also lived in the residence. Due to issues Ashley had with Barnes's drinking in the past, when she returned home shortly before midnight on April 6, 2018, and noticed Barnes had been drinking liquor, she poured the last quarter of the bottle that he had been drinking down the sink drain. Barnes then strangled Ashley in the kitchen to the point that she passed out.

FN2: The State alternatively charged Barnes with Domestic Violence for the choking incident and Felonious Assault. The Felonious Assault charge alleged that Barnes had caused substantial temporary incapacity.

{¶4} Ashley recalled regaining consciousness on the floor of the kitchen shortly thereafter. She then went into her bedroom to get her phone to call the police, but Barnes followed her and took her phone from her so that she could not call for emergency assistance. Barnes also prevented her from leaving the bedroom by following her around and blocking the door. Ashley eventually exited the bedroom and Barnes attempted to prevent her from leaving the house by following her and blocking the front door, but Ashley ran out the back door and went to a neighbor's house. There she had the neighbor call 911. Police and paramedics responded to the scene. An officer noted red marks on Ashley's neck consistent with her story. Barnes fled the area before police arrived.

{¶5} The Intimidation charge (Count 6) stemmed from a phone call Barnes made to Ashley on April 23, 2018, when he had still not been located by law enforcement. During the call Barnes threatened to harm or have someone else harm her if she proceeded with the case.

{¶6} The Menacing by Stalking charge (Count 7) stemmed from a series of incidents of Barnes inflicting violence against Ashley or threatening violence against her over a period of time. The series of incidents included one prior conviction of Barnes against Ashley.

{¶7} Barnes pled not guilty to all of the charges against him.

{¶8} On October 23-24, 2018, Barnes proceeded to a jury trial. The State presented the testimony of five witnesses including the victim, Ashley. The defense presented the testimony of five witnesses and then rested its case. The jury returned guilty verdicts on six of the seven counts against Barnes, acquitting him of (Count 3) Felonious Assault.

{¶9} On December 3, 2018, the matter proceeded to sentencing. Barnes was ordered to serve eighteen months in prison on Count 1, Domestic Violence, thirty-six months in prison on Count 2, Abduction, consecutive to each other. The trial court found that Counts 4 and 5 of Disrupting Public Services merged for sentencing and the State chose to proceed to sentence on Count 4. Barnes was ordered to serve 12 months in prison on Count 4, concurrent with Count 2. As to Count 6 and the Intimidation charge, Barnes was ordered to serve thirty-six months in prison, consecutive to the prison terms in Counts 1 and 2. Finally, Barnes was ordered to serve twelve months in prison on Count 7, Menacing by Stalking, concurrently with the other counts.

Barnes thus received an aggregate ninety month prison term for the crimes in this case; however, they were ordered to be served consecutive to a separate prison term Barnes had received in another matter from Logan County.

{¶10} A judgment entry memorializing Barnes's sentence was filed December 6, 2018. It is from this judgment that Barnes appeals, asserting the following assignments of error for our review.

Assignment of Error No. 1

Mr. Barnes was deprived of his right to the effective assistance of trial counsel when trial counsel was late to trial twice, failed to timely call witnesses, placed a witness on the stand who was unable to testify, and failed to object throughout the trial.

Assignment of Error No. 2

Frank Barnes's right to a fair trial and due process of law were violated by the cumulative errors that occurred during his trial.

Assignment of Error No. 3

Mr. Barnes's conviction for domestic violence under R.C. 2919.25 is not supported by sufficient evidence[.]

*State v. Barnes,* 3rd Dist. No. 8-18-67, 2019 WL 2724346, at *1–2 (Ohio Ct. App. July 1, 2019).

On October 29, 2019, the Ohio Supreme Court declined to accept jurisdiction of the appeal.

*State v. Barnes,* 157 Ohio St. 3d 1467 (Ohio 2019).

On October 7, 2019, Petitioner filed an application for reopening of the appeal pursuant to Ohio Appellate Rule 26(B). (Doc. 7, PAGEID # 303). On October 31, 2019, the appellate

court denied the Rule 26(B) application.  (*Id*., PAGEID # 316).  On February 18, 2020, the Ohio Supreme Court declined to accept jurisdiction of the appeal.  (*Id*., PAGEID # 339).  Additionally, on March 6, 2020, Petitioner filed a post conviction petition in the state trial court, asserting that he was denied the effective assistance of trial counsel because his attorney failed to investigate the jury array or request that his convictions on domestic violence and abduction be merged.  (*Id*., PAGEID # 340–43).  On March 31, 2020, the trial court denied that action.  (*Id*., PAGEID # 349).  Petitioner did not file an appeal.

On September 21, 2020, Petitioner filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1).  He asserts that he was denied the effective assistance of trial counsel (claims one, two and four); and that the evidence is constitutionally insufficient to sustain his conviction on domestic violence (claim three). (*See generally id*.).  It is the Respondent's position that Petitioner's claims are procedurally defaulted or without merit.

## II. STANDARD OF REVIEW

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this case.  The United States Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy."  *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

4

AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Court of Appeals for the Sixth Circuit explains § 2254(d)(1)'s standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies the law or bases its decision on an unreasonable determination of the facts, in light of the record before the state court. *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Williams*, 529 U.S. at 412–13.

*Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018*), cert. denied*, 139 S. Ct. 798 (2019).

Moreover, under § 2254(d)(2), a state court's factual determination is not "unreasonable" merely because the federal habeas court would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Instead, a state court's factual findings are "only unreasonable where they are 'rebutted by clear and convincing evidence' and do not have support in the record." *Moritz v. Woods*, No. 16-1504, 2017 WL 2241814, at *5 (6th Cir. May 22, 2017) (quoting *Pouncy v. Palmer,* 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted). Moreover, "[f]actual determinations by state courts are presumed correct absent clear

5

and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)) ("*Miller–El I*"). The burden of satisfying AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### A. Ineffective Assistance of Trial Counsel (Claims One and Two)

Petitioner asserts that he was denied the effective assistance of trial counsel because his attorney arrived late to trial on two occasions, failed to present defense witnesses, and failed to object to the improper admission of other acts evidence. (*See* Doc. 1, PAGEID # 3). The state appellate court rejected these claims on the merits:

> {¶32} Barnes first argues that his trial counsel was ineffective for failing to object to what he claims was improper "other acts" evidence that should have been precluded under Evid. R. 404(B), which reads as follows.
>
> [] Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.
>
> {¶33} In this case, Barnes argues that his counsel failed to object to multiple portions of testimony that he claims were introduced to show his bad character and establish that he acted in conformity with that bad character. Specifically, he argues that his counsel failed to object to testimony regarding his alcohol and drug use, testimony regarding an incident with Ashley that led to a civil protection order being filed against him, testimony regarding instances of Barnes throwing beer bottles at Ashley, and testimony regarding instances involving Ashley being slapped by Barnes.
>
> {¶34} The State responds by contending that the majority of the incidents of testimony that Barnes argues were improper were actually part of the incidents

that led to the charge of Menacing by Stalking and thus were part of the elements, or the res gestae, of the crime. The State argues that the testimony regarding the incident leading to the civil protection order, the testimony regarding the slapping, and the testimony regarding the thrown beer bottles were all direct evidence that Barnes made an ongoing threat of physical harm or caused physical harm or mental distress to Ashley, supporting the Menacing by Stalking charge. We agree.

{¶35} Menacing by Stalking pursuant to R.C. 2903.211(A)(1) reads as follows: No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person.

In the bill of particulars, the State alleged that the incident leading to the civil protection order where Barnes dragged Ashley out of her car, the incident where Barnes threw beer bottles at her, the incident where Barnes slapped Ashley, and the incident where Barnes and Carmen M. purportedly threatened Ashley all led to the Menacing by Stalking charge. Ashley testified at trial regarding all these incidents. Because the State was attempting to prove Menacing by Stalking through these incidents, the evidence supporting the elements would be admissible, and would not be improper "other acts" evidence. *See State v. DiCarlo*, 4th Dist. Scioto No. 09CA3301, 2010-Ohio-3759, ¶ 19.

FN7:  Perhaps Barnes's argument would be more properly directed to contending that his trials for various incidents should have been severed. We emphasize that we are not stating such an argument would have been successful, but it more logically follows the argument he is attempting to make here.

{¶36} As to the drugs and alcohol testimony, the State presented this evidence partially to explain the deterioration of the relationship between Barnes and Ashley, and it is involvement with alcohol that led to the incident on April 7, 2018. Thus again, it could be admissible as simple background to the incident.

{¶37} Nevertheless, even if trial counsel should have objected to the drug and alcohol testimony, and even assuming arguendo it was inadmissible, we cannot find that any failure to object here was prejudicial as the defense's trial strategy was not to paint Barnes as a "saint," but rather to paint Ashley as jealous of Barnes's other relationship with Carmen M., and to paint Ashley as a liar, particularly when it came to making purportedly false allegations against men for being violent in the past.

{¶38} Therefore we cannot find that Barnes's counsel was ineffective for failing to object to any of the purported "other acts" testimony, or that even if he was ineffective, that any failure would have been prejudicial in this matter. Thus this argument fails under both prongs of *Strickland*.

7

{¶39} Barnes next argues that his trial counsel was ineffective for being late both days to the trial, and for failing to have two of his witnesses present at a more convenient time so the trial could continue without a short break.

{¶40} The issue regarding timeliness was first mentioned in the record near the end of the trial on the second day, outside of the presence of the jury at a sidebar. On the second day of the trial, the defense began its case by questioning its first three witnesses. At the conclusion of the third witness's testimony, defense counsel indicated that he was surprised the three witnesses' testimony went so quickly, and the next two witnesses were not scheduled to arrive under subpoena for another twenty minutes.

{¶41} At that time, the trial court stated that tardiness was becoming a problem with defense counsel. The trial court noted its displeasure with all of defense counsel's timing in the trial, stating that defense counsel had apparently been late both days to trial, though this was not made clear earlier in the transcript. The trial court was also troubled by defense counsel causing further delay by not properly anticipating the length of testimony of witnesses. As a result of defense counsel's actions, the trial court held defense counsel in contempt, and fined him $50. Court then recessed until the defense witnesses arrived.

{¶42} While trial counsel's tardiness may have been unprofessional, it did not prevent the defense from presenting its case in this matter, and as far as the record is concerned there is no indication that the jury was aware that any slight delay in starting either day was the result of defense counsel. Similarly[,] there is no indication that the jury was aware that any twenty minute break that was taken on the second day of trial was attributable to the defense counsel. Regardless, trial counsel was punished for being late, and there is absolutely no indication whatsoever that it impacted the trial, or would have prejudiced the jury against Barnes. In fact, the jury was discerning enough to acquit Barnes of the Felonious Assault charge.

{¶43} Finally, Barnes argues that trial counsel failed to call "appropriate" witnesses to the stand. More specifically, Barnes argues that defense counsel attempted to introduce the testimony of one of Ashley's ex-boyfriends who would purportedly testify that Ashley had made a false allegation about him regarding domestic violence in the past. Defense counsel also attempted to call a children's services investigator, at Barnes's request, to testify regarding a children's services investigation that had taken place in the past regarding Ashley. The trial court prevented this testimony as being extrinsic and irrelevant.

{¶44} Notably, as to the children's services investigation, defense counsel actually stated he did not feel he could properly present the evidence but his client wished him to call the witness. We can find no ineffective assistance of counsel there. (*See* Tr. at 356). As to Ashley's ex-boyfriend, defense counsel did enter the testimony of a separate male who claimed that Ashley had made improper

8

> accusations in the past. Thus we see no ineffective assistance of counsel here for defense counsel's attempt to enter additional testimony.
>
> {¶45} Nevertheless, even assuming counsel should have been more diligent, there is simply no showing of any prejudice here. In fact, trial counsel secured an acquittal on the most serious charge against Barnes. While Barnes may wish to have a second attempt to try a different strategy, we will not second-guess the trial strategy of an attorney who is presumed to be competent, particularly where the record demonstrates absolutely no prejudice. Therefore, for all these reasons, Barnes's first assignment of error is overruled.

*State v. Barnes*, 2019 WL 2724346, at *5–7.

"In all criminal prosecutions," the Sixth Amendment affords "the accused . . . the right . . . to Assistance of Counsel for his defense." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principles governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). *Strickland* requires a petitioner claiming ineffective assistance of counsel demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. *Id*. at 687; *Hale v. Davis*, 512 F. App'x 516, 520 (6th Cir.), *cert. denied sub. nom. Hale v. Hoffner*, 134 S. Ct. 680 (2013).

A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below an objective standard of reasonableness.'" *Poole v. MacLaren*, 547 F. App'x 749, 754 (6th Cir. 2013) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011)), *cert. denied*, 135 S. Ct. 122 (2014). To make such a showing, a petitioner must overcome the "strong [] presum[ption]" that his counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 687. "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that

9

counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v. Haviland,* 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland,* 466 U.S. at 689).

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). On top of that, the Court has observed that while "'[s]urmounting *Strickland's* high bar is never . . . easy' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is even more difficult." *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). The Court instructed that the standards created under *Strickland* and § 2254(d) are both "'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

Petitioner cannot meet this standard here. The state appellate court found that the trial court properly admitted the "other acts" evidence referred to by the Petitioner as proof of the underlying criminal acts charged. Counsel therefore did not act improperly in failing to object. Similarly, the trial court refused to permit admission of certain testimony from proposed defense witnesses Zacharay Potter or Ryan Pratt as inadmissible under Ohio law. (Doc. 7-1, PAGEID # 711–14, 726–31).[1] As discussed by the state appellate court, Petitioner cannot establish prejudice from trial counsel's late arrival. It did not impact trial proceedings against the Petitioner.

---

[1] Pratt, who conducted an investigation for Children Services on allegations of abuse, testified outside of the presence of the jury that he did not believe that the allegations against the Petitioner were false. (*See* Doc. 7-1, PAGEID # 731). Thus, it does not appear that Pratt's testimony would have assisted the Petitioner.

B. **Cumulative Error**

Petitioner also asserts that he was denied a fair trial based on the cumulative errors of defense counsel. (Doc. 1, PAGEID # 3). However, as discussed above, Petitioner has failed to establish that his attorney performed in a constitutionally ineffective manner. Further, "the Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006) (quoting *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002)). To justify a grant of habeas relief, a federal court must find a violation of law that has been clearly established by the holdings of the United States Supreme Court decisions at the time of the relevant state-court decision. *King v. Bobby*, 433 F.3d 483, 490 (6th Cir. 2006). The Sixth Circuit has held that a habeas petitioner cannot find relief on a claim of cumulative error by the trial court. *See, e.g.*, *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) ("[T]he law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue."); *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005) ("[W]e have held that, post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief.").

C. **Insufficiency of the Evidence (Claim Three)**

Petitioner asserts that the evidence is constitutionally insufficient to sustain his conviction on domestic violence because the State failed to establish physical harm. (Doc. 1, PAGEID # 3). The state appellate court rejected this claim as follows:

> {¶14} In this case Barnes challenges his conviction for Domestic Violence in violation of R.C. 2919.25(A), a felony of the fourth degree due to a prior conviction. Domestic Violence as charged is codified in R.C. 2919.25(A), and reads, "No person shall knowingly cause or attempt to cause physical harm to a family or household member."
>
> {¶15} Barnes focuses his argument on appeal specifically on the element of "physical harm," contending that there was insufficient evidence for a rational

11

trier of fact to find that the element had been proven beyond a reasonable doubt. Revised Code 2901.01(A)(3) defines "Physical harm to persons" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration."

{¶22} At the outset of our analysis we note that Barnes does not argue on appeal that the State presented insufficient evidence that he was a family or household member to support his Domestic Violence conviction; rather, he focuses his argument solely on the "physical harm" element.

{¶23} As to the purported physical harm in this case, Ashley testified that Barnes choked her, wrapping his hand around her neck. Ashley testified that she was choked to the point that she lost consciousness. She testified that the incident left bruises for days after, and an officer noted red marks on her neck shortly after the incident when he responded.

{¶24} Physical harm, as defined, includes any injury no matter how slight. The testimony presented would consist of at least a slight injury. *See State v. Torman*, 3d Dist. Putnam No. 12-15-10, 2016-Ohio-748, ¶¶ 31–32 (concluding that the victim's testimony that the defendant squeezed the victim's chin and jaw resulting in minor bruising was sufficient evidence of physical harm); *State v. Ward*, 3d Dist. Seneca No. 13-07-21, 2008-Ohio-84, ¶¶ 15–21 (concluding that testimony from a witness that the defendant "grabbed the victim by the throat and threw her to the ground" was sufficient for a rational trier of fact to conclude that the physical harm element of R.C. 2919.25(A) was met); *State v. Summers*, 11th Dist. Ashtabula No. 2002-A-0074, 2003-Ohio-5866, ¶ 31 (noting that the physical harm element of R.C. 2919.25(A) was satisfied despite the victim's failure to seek medical treatment and the absence of corroborating evidence regarding the victim's injuries because the jury believed the victim's testimony regarding the minor bruising and "soreness" or "stiffness" she suffered).

{¶25} Nevertheless, as this Court has noted in previous opinions, "'R.C. 2919.25 does not require the state to prove that a victim has sustained actual injury since a defendant can be convicted of domestic violence for merely attempting to cause physical harm to a family [or household] member.'" *State v. Jackson*, 3d Dist. Seneca No. 13-18-18, 2019-Ohio-170, ¶ 59, citing *State v. Nielsen*, 66 Ohio App.3d 609, 612, 585 N.E.2d 906 (6th Dist.1990). Thus even if the jury found somehow that there was no physical harm in this matter, they still could have found there was an attempt to cause physical harm through the choking. Regardless, the State presented sufficient evidence to convict Barnes of Domestic Violence as indicted.

{¶26} We would note that on appeal, Barnes focuses part of his argument challenging the sufficiency of the evidence on the testimony of a defense witness, the EMT who responded to the scene. The EMT testified that he did not see any red marks on Ashley's neck. While Barnes may feel this contradicts the State's evidence, to the extent that it did (at all), that would be a question of weight of the

> evidence for the jury to determine, not sufficiency, and Barnes has not raised a challenge to the weight of the evidence. Regardless, even if he did, we could not find that the jury clearly lost its way in this matter in convicting him based on the evidence presented.
>
> {¶27} For all of these reasons, Barnes's third assignment of error is overruled.

*State v. Barnes,* 2019 WL 2724346, at *2–4 (footnotes omitted).

The Fourteenth Amendment's Due Process clause, which is applicable here, "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question in a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson,* 443 U.S. at 324 n.16).

Additionally, when determining if the evidence was sufficient to support a petitioner's conviction, a federal habeas court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson,* 443 U.S. at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id*. (quoting *Jackson*, 443 U.S. at 326). Instead, "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id*. at 296–97 (quoting *Jackson*, 443 U.S. at 326).

Further, federal habeas courts apply a "double layer" of deference to state court determinations of the sufficiency of the evidence. Deference must be given, first, to the jury's

finding of guilt because the standard, announced in *Jackson*, is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Second, even if a *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*; *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). This is a substantial hurdle to meet.

For the reasons discussed by the state appellate court, Petitioner has failed to do so here.

## III. PROCEDURAL DEFAULT

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b)–(c). If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State may have a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. *Id*. That means that, if the claims are not presented to the state courts in the way in which state law requires, and consequently, the state courts do not decide the claims on their merits, neither may a federal court. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977) (holding that "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case—that is, they are "procedurally defaulted").

To determine whether a habeas petitioner has procedurally defaulted a claim, courts consider whether: (1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforce that rule; (3) the rule is an adequate and independent state ground for denying review of a petitioner's federal constitutional claim; and (4) the petitioner can show cause and prejudice excusing the default. *Williams v. Burt*, 949 F.3d 966, 972–73 (6th Cir. 2020) (citing *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc)); *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (outlining the four-factor *Maupin* test).

Applied here, Petitioner asserts that his attorney performed in a constitutionally ineffective manner by failing to challenge the jury pool on the basis that Petitioner is Black and the jury was all white. (Doc. 1, PAGEID # 10). Petitioner failed to raise this claim on direct appeal. It is well-settled that "[c]laims appearing on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of res judicata." *Hill v. Mitchell*, No. 1:98-CV-452, 2006 WL 2807017, at *43 (S.D. Ohio Sept. 27, 2006) (citing *State v. Perry,* 10 Ohio St.2d 175 (1967)). Petitioner violated the *res judicata* rule set forth in *Perry* when he failed to raise those claims on direct appeal, and consequently satisfied the first prong of the *Maupin* test.

Petitioner attempted to raise the issue in his petition for post-conviction relief; however, the trial court refused to address the merits of the claim as barred by res judicata:

> Defendant was represented by new counsel on his direct appeal and nothing indicates that appellate counsel was enjoined from asserting a claim of ineffective assistance of trial counsel . . . .
>
> Defendant had the opportunity to present all claims as to why his trial counsel was ineffective on direct appeal. Nothing Defendant has presented by his filings indicated otherwise.
>
> ***
>
> Defendant, an African American, is alleging that his trial counsel was ineffective because trial [counsel] did not object to an all-white jury and that trial counsel failed to investigate to ensure that the jury pool would be representative of the population of African Americans in Logan County, which he claims to be 1.8%. However, in *State v. Moore*, the Supreme Court held that "the use of voter registration rolls as exclusive sources for jury selection is constitutional and 'does not systemically, [or] intentionally, exclude any [economic, social, religious, racial, political and geographical group of the community].' *State v. Johnson* (1972), 31 Ohio St.2d 106, 114, 60 O.O.2d 85, 90, 285 N.E.2d 751, 757; *State v. Spirko* (1991), 59 Ohio St.3d 1, 35-36, 570 N.E.2d 229, 265." *State v. Moore*, 81 Ohio St.3d 22 at 28 (1998).
>
> Defendant refers to the *State v. Fulton*, 57 Ohio St.3d 120, 556 N.E.2d 1195 (1991) in support of his claims about the jury pool. *State v. Fulton* does set forth

> that "In order to establish a violation of the fair representative cross-section of the community requirement for a petit jury array under the Sixth and Fourteenth Amendments to the United States Constitution, a defendant must prove: (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the representation is due to systemic exclusion of the group in the jury-selection process. (*Duren v. Missouri* [1979], 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579, applied and followed.)" *State v. Fulton*, 57 Ohio St.3d 120, 566 N.E.2d 1195 (1991), Syllabus by the Court. Defendant is in a distinctive group but he has not provided any grounds that the representation of the distinctive group was due to a systematic exclusion or that the venires by which the jury was selected was not fair or reasonable.
>
> \*\*\*
>
> The Court finds that the issues of the petition/motion post-conviction relief are res judicata as they are issues that relate to ineffective assistance of counsel which was taken up on the direct appeal. Defendant has not provided any substantial grounds for relief as the issues are ones that should have been a part of the direct appeal on the issue of ineffective assistance of counsel. Defendant has not provided any grounds on why those issues were not part of the appeal when he did have appellate counsel that was different than his trial counsel.

(Doc. 7, PAGEID # 349–54). "The Ohio court's alternative ruling on the merits did not remove the procedural default because 'a state court need not fear reaching the merits of a federal claim in an alternative holding.'" *Conley v. Warden, Chillicothe Corr. Inst.*, 505 F. App'x 501, 506 (6th Cir. 2012) (citing *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989); *Coe v. Bell,* 161 F.3d 320, 330 (6th Cir. 1998)).

Ohio courts have consistently refused, in reliance on the doctrine of res judicata, to review the merits of procedurally barred claims. *See, e.g.*, *State v. Cole*, 2 Ohio St.3d 112 (1982). Further, the Sixth Circuit has held that Ohio's doctrine of res judicata is an independent and adequate ground for denying federal habeas relief. *See, e.g.*, *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir.

2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). Accordingly, the Court is satisfied from its own review of relevant case law that the res judicata rule articulated in *Perry* is an adequate and independent ground for denying relief.

Notably, and even assuming, *arguendo,* that Petitioner had properly raised this claim in a petition for post-conviction relief, he nonetheless has committed a procedural default. Petitioner never filed a timely appeal of the trial court's decision to the state appellate court. Further, he may now no longer do so, as Ohio does not permit delayed appeals in post-conviction proceedings. *See Myers v. Haviland*, No. 3:16-CV-00659, 2017 WL 9476855, at *24 (N.D. Ohio May 8, 2017), *report and recommendation adopted*, No. 3:16 CV 659, 2017 WL 4837479 (N.D. Ohio Oct. 26, 2017) (citing *Nesser v. Wolfe*, 370 F. App'x 665 (6th Cir. March 25, 2010) (holding that "Ohio does not permit delayed appeals in postconviction proceedings, and this is an adequate and independent ground upon which to deny relief") (other citations omitted). Thus, Petitioner has procedurally defaulted his final claim of ineffective assistance of counsel.

Petitioner has failed to establish cause for this procedural default. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[,] '. . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule.'" *Coleman*, 501 U.S. at 753 (quoting *Murray*, 477 U.S. at 488). It is Petitioner's burden to show cause and prejudice. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (internal citation omitted)). A petitioner's pro se status, ignorance of the law, or ignorance of procedural requirements are insufficient bases to excuse a procedural default. *Bonilla v. Hurley,* 370 F.3d 494, 498 (6th Cir. 2004). Instead, to establish cause, a petitioner "must present a substantial

18

reason that is external to himself and cannot be fairly attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007). Petitioner has failed to meet this burden here.

## IV. DISPOSITION

For the foregoing reasons, it is **RECOMMENDED** that this action be **DISMISSED**.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO ORDERED.**

Date: March 16, 2021  /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE

19